Essex County Court of Common Pleas.

SAMUEL GORDON EL, BY HIS NEXT FRIEND, HIS FATHER, SAMUEL GORDON EL, PETITIONER-APPELLANT, v. NEWARK STAR-LEDGER, ALSO KNOWN AS NEWARK MORNING LEDGER CO., AND LIBERTY MUTUAL INSURANCE COMPANY, RESPONDENTS-APPELLEES.

Decided February 15, 1943.

For the petitioner-appellant, *Harry Krieger.*

For Newark Star-Ledger, *Osborne, Cornish & Scheck.*

For Liberty Mutual Insurance Co., *John W. Taylor.*

FLANNAGAN, C. P. J.   This is the second appeal in this case from the Workmen's Compensation Bureau.   The first appeal was on a dismissal of the petition upon the testimony of the petitioner alone.   This court held that the dismissal was error upon an opinion filed on December 10th, 1941, to which reference is now made, and remanded the case for further testimony and findings.   The testimony for both sides was then fully heard in the Bureau and the deputy commissioner, upon the whole case, reached the same conclusion he had reached on the petitioner's case alone, and accordingly again dismissed the petition.   This appeal is from that dismissal.

On a review of the whole testimony I am not prepared to accept *in toto* the testimony of either side, but I have endeav-

ored to determine where the truth lies from the entire evidence.

The petitioner, a colored boy 12 years of age, entered into an arrangement with the respondent newspaper to act as a "route man." He was given a book containing the names and addresses of a certain number of subscribers already obtained for the respondent, and each day was given a number of papers corresponding with the number of papers to be delivered on that day. A lesser number of papers were given him on Sundays than on weekdays. According to petitioner his hours were from 5:30 to 7:00 A. M., seven days a week. According to testimony in behalf of respondent he started work at 6 o'clock. He delivered these papers and collected for them.

Respondent claims that petitioner accounted for these papers periodically at wholesale prices, thus being, as claimed, a purchaser, "a little merchant," he retaining as his compensation the difference between the wholesale and retail prices.

Respondent wished to make the petitioner an independent contractor, and to establish the petitioner in that status he was required to sign a lengthy printed form denominated "Independent Distributor Agreement" (*Exhibit R*-1), and his mother was told that in order for him to get the job she would have to sign also. This document, which the petitioner signed (but which singularly enough respondent never signed), designated petitioner as a "distributor." If viewed as standing alone, it fixed the status of petitioner as that of an independent contractor. It only provided, however, for part of the work which petitioner performed for respondent; it did not include in petitioner's duties two of the important parts of the work, which petitioner was expected to and did perform for respondent, viz., (1) the collection of insurance premiums, and (2) the soliciting for new subscribers. While the document "advised" the petitioner to "make periodical solicitation visits" to secure new subscribers, it avoided making this a duty. Any mention of the collection of insurance premiums was omitted altogether.

In deciding whether a laborer is entitled to the benefits of

the Workmen's Compensation Act the court will not be confined to mere written words subscribed by the workman, but will look further to ascertain what in truth was the work the employee actually did at the instance, and for the benefit, of the employer.

The injection of insurance into the work of petitioner was part of a promotion scheme of respondent for maintaining and increasing circulation. For the collection of these premiums petitioner received no additional compensation over and above that indicated by the printed form, but for each new subscriber he obtained it is not disputed that he did receive special compensation, the rate being in dispute.

It is maintained that this arrangement brought the petitioner within the provisions of *R. S.* 34:15-36 as "sales agent or distributor as an independent contractor" of a newspaper. In determining whether it did or not the arrangement should be taken as a whole; that part favorable to the contention advanced by respondent cannot be separated, regarded alone as the controlling factor, and the rest ignored.

The statute relied on is an amendment to the Workmen's Compensation Act (laws of 1932, chapter 64); it created a special class, viz., those engaged in publicity (disseminators of newspapers, magazine, and periodicals). The Compensation Act is remedial legislation and, construing the provision in question strictly, it covers only those whose work is strictly and wholly within the descriptions, "sales agent or distributor as an independent contractor." The collection of insurance premiums does not fall within the functions of a sales agent or distributor of newspapers and the securing of new subscribers was a function separately undertaken and compensated for, and, while "advised," was not a duty included in those prescribed in the writing which is alleged to make the petitioner an independent contractor.

Taking the petitioner's work as whole, it does not seem to me to have been performed as "sales agent or distributor as an independent contractor" for the purposes of the Compensation Act within the meaning of the section invoked. So far as the collection of insurance premiums is concerned this was not the function of a sales agent or distributor. So

far as the obtaining of new subscribers was concerned, it was a separate undertaking, separately compensated for. Neither function was within the obligations of petitioner provided for in the respondent's independent contractor form. (*Exhibit R*-1.) It was while performing the latter function that petitioner was injured.

On the day of petitioner's injury Mendelsohn (petitioner's "boss") was in possession of a current copy of the *Star-Ledger,* which, due to some unforeseen circumstance, had not been delivered to the person intended, one Mrs. Todd. The paper is identified by having written across the top of the front page in large heavy black crayon in Mendelsohn's handwriting, the words, "Mrs. Todd 109 Orchard." Petitioner had completed his regular work and was about to leave for the day when Mendelsohn handed him the said Todd. copy, stating it was for the purpose of using it to get a new subscriber. The testimony of Mendelsohn was as follows: "I told the child to put it in some house or I asked him to put it in some house where he could come back and get a customer later on. * * * I said on his way home he could put it in some house and maybe get a customer." Petitioner took the paper and started on this mission with another boy, riding on the handlebars of a bicycle. He had only gone a very short distance from Mendelsohn's office, where he received the paper, when he came in contact with an automobile, resulting in the fracture of his leg.

It is testified by the driver of the car and one of the occupants (McFadden and Carr) that the petitioner did not have the Todd paper with him at the time of the accident, but this is negatived by the physical evidence. The petitioner testified that he had the paper "all the time" and produced it at the trial to substantiate his version. (*Exhibit P*-4.) It was identified by the writing thereon ("Mrs Todd 109 Orchard"), admittedly in the handwriting of Mendelsohn.

This isolated venture upon which petitioner was engaged to deliver, not sell, one mutilated newspaper to "some house" on a chance of securing a new subscriber, cannot be regarded as a delivery by a "distributor or sales agent" to the "general public." It was not an act promised to be performed under

the printed form making the petitioner an independent contractor. Hence, it was not excluded from the general provisions of the compensation statute by the special exceptions provided for by the section in question (*R. S.* 34:15-36; *N. J. S. A.* 34:15-36).

It is urged that the petitioner was "skylarking" at the time of the accident. What is testified to is that the petitioner was riding on the handlebars of a bicycle operated by the boy with whom he started out, that the operator had lost control of the machine and was on the wrong side of the road. This, if true, seems to me to indicate negligence rather than skylarking. It is denied by both petitioner and his companion.

These views lead to the conclusion that the petitioner is entitled to compensation.

The determination pursuant to this opinion will fix the compensation rate at $3.58 per week. While the petitioner earned some special compensation for securing new subscribers, he failed to see to it that there was any testimony in the whole case giving the exact amount thereof. In consequence of his failure to carry this burden he must lose the benefit of these earnings in estimating his rate of compensation. The period of temporary disability will be from November 7th, 1940, to January 4th, 1941, and the extent of permanent disability will be at 20 per cent. of total permanent of one leg.

The remaining question is as to double liability, petitioner claiming double compensation (*R. S.* 34:15-10; *N. J. S. A.* 34:15-10) on the ground that he was employed in violation of the Child Labor Law, being only 12 years of age and working before 7:00 A. M.

By section 3, page 333, of the Child Labor Law, laws 1940, chapter 153, we find that the working of boys under sixteen years of age before 7:00 o'clock in the morning is prohibited, except as may be provided in section 15 of the same act; the language is: "nor shall any minor under sixteen years of age be so employed, permitted or suffered to work in a gainful occupation before seven o'clock in the morning."

Turning to section 15, page 342, we find no exception covering the working of boys under 14 years *before seven o'clock*

A. M. That section contains the following: "No boy under fourteen years of age * * * may engage in any street trade, which term for the purpose of this section, shall include the selling * * * soliciting for, collecting for * * * or distributing any newspapers * * * from house to house. * * * provided, that nothing in this section shall prevent boys between twelve and fourteen years of age from delivering, soliciting and collecting for newspapers and magazines over routes in residential neighborhoods at such times and under such conditions as are not prohibited in this act. * * *"

Turning back to section 3 we find, as above pointed out, that the working boys between twelve and fourteen years of age (viz., "under 15 years of age") before 7:00 o'clock A. M. is prohibited by the act. The age of petitioner being twelve years, it follows that he is entitled to double compensation under *R. S.* 34:15-10; *N. J. S. A.* 34:15-10.

Findings may be submitted accordingly under rule **9.**